[Crim. No. 4077.   Second Dist., Div. Three.   Mar. 26, 1947.]

THE PEOPLE, Respondent, v. FRANK BUDDY BROWN, Appellant.

Walter L. Gordon, Jr., for Appellant.

Robert W. Kenny, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

SHINN, Acting P. J.—Defendant was convicted in a court trial of contributing to the delinquency of one Janet Ryan, who was of the age of 16 years. He was charged by information with offering the girl employment in a house of prostitution. Upon finding defendant guilty, the court suspended proceedings and placed him on probation. Defendant gave notice of appeal from the "judgment" and from an order denying his motion for new trial.

Proof of the allegations of the information would have established his guilt of the offense charged. (*People* v. *Cohen,* 62 Cal.App. 521 [217 P. 78]; *People* v. *Perfetti,* 88 Cal.App. 609 [264 P. 318]; *People* v. *Lamanuzzi,* 77 Cal.App. 301 [246 P. 557].) Under his specification of insufficiency of the evidence, appellant says: "There is nothing in the record tending to show that Appellant committed any act or acts which tended to cause or encourage the Complaining Witness to come within any of the provisions of any of the subdivisions of Section 700 of the Welfare and Institutions Code; nor is there any evidence that any of his acts contributed to the delinquency of said minor; there is no evidence at all to sustain this conviction."

The evidence disclosed that the girl made a trip to a place called "Fisher's" with another girl and three boys. Fisher's was described as a "colored place where they have a juke box there and you can dance." Upon her second visit she met defendant and saw him there upon four occasions. She called him on the telephone once or twice and upon one occasion

he took her to dinner. She testified that she had had drinks at Fisher's but that none was served to her when she was there with defendant. Police Officer Danforth testified that upon the occasion when she was arrested she was at Fisher's, seated at a table drinking liquor, which she testified she had poured for herself in the kitchen, and defendant was seated on a couch drinking milk. She testified at the preliminary examination as follows: ''Q. At any of those times you were up in Fisher's with Mr. Brown, did you ever have a conversation with him in which he stated that he wanted you to work for him in a house of prostitution? A. Not at Fisher's. Q. Did such conversation take place somewhere else? A. Yes. Q. Where was that? A. When he was taking me home. Q. Was that on an occasion when you had been to Fisher's and you were on your way home from Fisher's? A. Yes. Q. Were you to work for him in San Francisco or in Los Angeles? MR. GORDON: Just a moment, now. I submit that calls for a conclusion. I would like to have the conversation. THE COURT: State the conversation. Q. BY MR. TOBEY: What was the conversation that you had with Mr. Brown in that regard? A. I don't remember the exact words or anything, but it was the second time he had seen me up there. I went up there with a girl, her and myself. Q. Just the time of the conversation, now; what was the conversation? A. Well, he asked me if I had been in Fisher's much before, and I said no. I don't remember exactly, you know, the exact words or anything, but it just came around if I wanted to work there, that is all. Q. Was there anything said as to whether that was to be in Los Angeles or in San Francisco? A. No, sir. Q. Was the same subject mentioned on more than one occasion? A. No, sir. Q. Was anything mentioned as to the type of place that it was to be? A. Well, when he—— I thought it was going to be—— Q. Was anything said as to whether it was to be a place like Fisher's, or something different from Fisher's? A. No, it would not be anything like Fisher's. Q. What was said in that regard? A. At first I thought it was as a hostess, you know, that he was talking about before I thought any further about it, and I just got the idea that it was something like Fisher's place, and that is what I thought, and I said something about it, and he said it would not be anything like Fisher's. Did he say whether it would be better or worse than Fisher's? A. No, I just—— he said it would be better, because I said, 'Does it look like Fisher's place, anything like

that?' and he said, 'No, it is better,' something like that. Q. At any time that you were out with Mr. Brown did he ever put his arm around you? A. Once, yes. Q. Did he ever feel of your breasts? A. No, he—— he kind of tried to, I guess, but he didn't. Q. Did he ever kiss you at any time that you were out with him? A. No, I kissed him. Q. On more than one occasion of your being out with him? A. No. Q. Just the one time? A. Yes. Q. Which time was that? A. I don't exactly remember. Q. You don't remember whether the first, second or third? A. I know it was not the first or second time; I think it was about the third time I was out. Q. This conversation that you had with Mr. Brown relative to your working for him in a house of prostitution—— MR. GORDON: Just a moment. That assumes a fact not in evidence, your Honor. THE COURT: What do you mean, a fact not in evidence? MR. GORDON: 'A house of prostitution.' THE COURT: What else did she call it? The objection is overruled. Q. BY MR. TOBEY: Did that conversation occur here in the City of Los Angeles? A. Yes, sir. Q. What reply did you make to the request to work for him? A. I said 'no.' Q. Did you make any other statement than that? A. Well, it took me a couple of minutes to get it through my head, you know, and I just said, 'No,' and he said, 'O.K.' MR. TOBEY: You may cross examine. MR. GORDON: No cross examination.''

Upon the trial it was stipulated that the case be tried on the transcript of the testimony at the preliminary. Defendant did not take the stand. The case was submitted without argument.

The testimony which we have quoted constitutes the evidence upon which the conviction rests. Defendant argues that the questions propounded by the district attorney with respect to employment in a house of prostitution were leading and that they called for conclusions of the witness. He also points out that the witness, in relating her conversation with defendant, attributed to him no statement which would indicate that he was proposing employment in a house of prostitution or anything other than respectable employment. The argument, as far as it goes, has merit, but we do not think it goes far enough to establish defendant's contention that the evidence was insufficient to support the conviction. A 16-year-old school girl was making midnight visits to a place where she could procure liquor and defendant was a frequenter of the place. He offered the girl employment, which she declined. This much is admitted by his failure to testify. The girl tes-

tified, in answer to leading questions by the district attorney, that she was offered employment in a house of prostitution and that she at first did not comprehend the nature of the offer. Her testimony as to defendant's offer was vague, except in reply to the leading questions. Defendant's counsel waived cross-examination. This is a circumstance deserving of consideration. It may be that it would have been developed by cross-examination that there was no basis for the conclusions of the witness or her understanding that she was being offered employment in a house of prostitution, or it may be that it would have been developed that her understanding was justified. The reasonable assumption is that cross-examination was waived for the latter reason. The setting in which the conversation was had scarcely suggests that defendant was looking for a child's governess or a house maid. He did not avail himself of the opportunity to advocate the purity of his motives. He did not explain what he was looking for at this place which was frequented by young colored girls. He did not enlighten the court as to what his occupation was or what he had given the girl to understand it to be, and there was nothing in the testimony from which it could reasonably be inferred that he was seeking candidates for honest or respectable employment. He was willing that the case be tried in a manner that would shed the least possible light upon his activities. He evidently believed that he would have a better chance of escaping in the darkness than he would have of vindication upon a full disclosure of the facts. The evidence in the case was meager, but the equivocal testimony given by the girl was to be weighed in the light of the circumstances. The situation was one which defendant brought upon himself if the girl's uncontradicted understanding of his offer was erroneous. The trial court was justified in drawing the inference that her understanding of defendant's offer was probably justified by what she knew of him and by the general conversations which she had had with him. Defendant offered no evidence as to his good character.

Upon defendant's application for probation, his counsel stated, in part, as follows: "MR. GORDON: I have known this defendant for years. He is a man who is not addicted to work. THE COURT: He has been working, but in the wrong department. MR. GORDON: He isn't a vicious character by any means, but he is one of the type of men that you will find in every average sized city, who identify themselves with some

progressive movement, and then are not inclined to get out and do any work themselves. I will be very frank with your Honor. I have known this fellow for sometime, and he has not been the type to get out and lend himself to any moral derelictions of any great moment.'' Counsel then referred to an item of evidence found in the testimony of Officer Danforth and which was mentioned in the report of the probation officer, and said: ''In this case I think your Honor will particularly remember the probation officer's report, that this man was sitting up there drinking milk.'' This apparently was the only evidence in the case which was considered favorable to defendant and was doubtless given due consideration in the granting of probation upon condition that defendant spend 90 days in jail. Defendant's conviction was not a miscarriage of justice.

There are no other points in appellant's brief which merit particular attention.

█ Since no judgment was rendered and defendant made a motion for new trial, he could appeal only from the order denying the motion. (*People* v. *Murphy*, 60 Cal.App.2d 762 [141 P.2d 755].)

The attempted appeal from the judgment is dismissed. The order denying the motion for new trial is affirmed.

Wood, J., and Kincaid, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 24, 1947. Schauer, J., voted for a hearing.